HARTFORD ACCIDENT & INDEMNITY COMPANY,
INC, *v.* STATE, USE OF RITTER,
ADMINISTRATRIX, ET AL.

[No. 73, October Term, 1952.]

434

*Decided February 6, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Russell Morton Brown,* with whom were *Thomas C. Carrico* and *J. Howard McGrath* on the brief, for the appellant.

*James T. Mitchell* and *George T. Burroughs* for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The appeal in this case requires a decision as to whether the judgment in a replevin suit in the Circuit Court for Charles County fully determined the question of title and is binding in a subsequent suit on the replevin bond, against the surety.

John A. Brickley, owner of a farm in St. Mary's County, known as De La Brooke Manor, sold the place by contract dated June 27, 1949, to an Indian known as Will Brooks—Chief Hawk Eagle. Of the 300 acres sold, some 240 acres were in timber. The contract provided that the Indian Chief should pay a deposit of $1,000.00 on account of the purchase price of $16,000.00, and should pay an additional $4,000.00 in four months, at which time settlement was to be made. The balance of

the purchase price was to be secured by mortgages. If the purchaser failed to settle, as provided, the contract said that "the deposit herein provided for may be forfeited at the option of the seller, in which event the purchaser shall be relieved from further liability hereunder, or without forfeiting the said deposit the seller may avail himself of any legal or equitable rights which he may have under this contract." When the settlement date arrived, the Indian Chief was unable to pay the $4,000.00 called for by the contract. Brickley accepted $2,500.00 on account, permitting the purchaser to enter in possession and afforded him a short additional time to dispose of other property owned by him, so that he could make settlement. Early in 1950, no settlement having been tendered, it was agreed that Brickley should attempt to find a buyer for the timber on the place and apply the proceeds to the contract.

The Indian Chief remained in possession. During this period, John W. Ritter opened negotiations with Brickley for the purchase of the timber. He made a written offer which was orally refused by Brickley. About the first of July, 1950, Brickley learned that Ritter had entered upon the land, had commenced cutting the timber, and was hauling it to Waldorf in Charles County. He notified Ritter to stop cutting. Being informed that some of the logs cut had been taken to Waldorf, Brickley instituted an action of replevin against Ritter in the Circuit Court for Charles County, recovered possession of the logs and sold them for $1,077.69.

After the replevin action had been brought, Brickley and the Indian Chief entered into a contract entitled "Cancellation of Contract". This agreement recites the contract of sale of June 27, 1949, and the subsequent default by the purchaser, authorizes the purchaser to remove the crops, requires Brickley to refund $3,100.00, and leaves the purchaser in possession, rent free, until the farm is sold.

At the trial of the replevin case, Brickley was the only witness. After hearing his testimony and consid-

ering the contract of sale and the cancellation contract, which were offered in evidence, the Court granted a motion for a directed verdict made by Ritter, the defendant. Judgment was then entered "in favor of defendant and against plaintiff for costs". Some time later, Ritter and Miller & Bradley, Inc., to whom Ritter had agreed to sell the logs which had been replevied, sued the Hartford Accident & Indemnity Co., Inc., the surety on the replevin bond filed by Brickley in the replevin suit, because Brickley had not prosecuted the writ of replevin with effect. Ritter subsequently died, and Virginia Ritter, his administratrix, was substituted. She, with Miller & Bradley, Inc., are the appellees in this appeal and the Hartford Accident & Indemnity Co., Inc., is the appellant, the appeal being from a judgment in the second suit in favor of the plaintiffs, the appellees here.

At the trial of the suit on the replevin bond, the proceedings in the replevin case were introduced in evidence, and the Court, hearing the case without a jury, ruled that in the replevin case there was "a determination that Brickley was not entitled to the timber or logs mentioned in the replevin writ; that the Indian Chief did have a right to sell, and that Ritter did purchase. . . So the question now before the Court is, how much, if any, is due on the bond filed in connection with the replevin suit?" The Court refused a proffer from John A. Brickley that the Indian Chief had wholly defaulted, and the other facts as to Ritter's offer to purchase and Brickley's refusal, and that thereafter, Brickley found Ritter seated in an automobile talking to the Indian Chief on the farm, in the presence of another Indian, Chief Turkey Tayac, and that Brickley thereafter received a telephone call from Chief Turkey Tayac, telling him that Ritter had gone on the farm and cut the timber. A similar proffer from Chief Turkey Tayac was also overruled. Judge Digges said: "We overrule the proffer, with the observation that those facts, together with some other facts, were before the Court in the replevin case, *John A. Brick-*

*ley v. John W. Ritter*; and in that case the Court decided that the Indian Chief had a right to sell to Ritter and did sell."

The damages claimed in the declaration by Ritter were $548.60, arrived at by computing the value of 20,648 board feet of logs at $75 per thousand, the price at which Miller & Bradley, Inc. had agreed to buy them, less $1,000.00 advanced on the price by that corporation. There is no dispute that there were 20,648 broad feet cut and sold. Miller & Bradley, Inc. claimed $1,591.20, made up of the $1,000.00 advanced by them, net profit at the rate of $25 per thousand board feet, and interest of $75.00. Judgment was entered for Miller & Bradley, Inc. in the amount of $1,516.20, the amount of the claim without interest, and judgment was entered in favor of Virginia Ritter, Administratrix, for $342.12, representing the $548.60 claimed, less $206.48, or $10 per thousand, which was the amount mentioned in the contract of June 27, 1949, that the Indian Chief was to pay Brickley for any timber he cut.

The appellant argues that the Trial Court erred in ruling that the replevin action was conclusive as to the title of the logs which have been replevied. It bases its argument on two grounds—first, that a judgment in replevin which does not comply with Art. 75, Sec. 129, Code of 1951, in that it does not assess the value of the property and damage, if any, is not a final, appealable judgment, but merely the equivalent of a writ of *retorno habendo;* and second, that judgment in the replevin suit "could not have determined that title was in defendant Ritter because there was no evidence at any time that he had either title or right of possession."

We think the judgment in the replevin case was a final judgment and conclusive and binding on Brickley. The general rule is that the action of replevin does not necessarily try the title to the property replevied, as the action is possessory, and unless the title to the property was put in issue in the replevin suit, the defendant in the suit on the bond, (the plaintiff in the replevin suit) may

prove his ownership or title to the property. If, however, title to the property was in issue in the replevin suit, judgment there is conclusive as to title in the suit on the bond. *Rowan v. State,* 172 Md. 190-198, 191 A. 244. The cases illustrate the difference in the two situations.

In *Seldner v. Smith,* 40 Md. 602, the question was whether a sale of goods was made under such representations as to justify the claim of the vendors that they were entitled to annul the sale and retake the goods. The rebuttal by the defendants was that the goods had been fairly purchased. The Court said: ". . . it appears that *title* to the goods was put in issue and no evidence was offered by either party, except that which tended to support his *title.* We are therefore of opinion that under the peculiar circumstances of this replevin case, the verdict and judgment were conclusive as to the want of title of the plaintiffs in the replevin, and that the question of title could not be re-opened in this suit." *Cumberland Coal & Ice Co. v. Tilghman,* 13 Md. 74.

An example of the other situation is found in *Crabbs v. Koontz,* 69 Md. 59, 13 A. 591. There a steam engine and thresher were sold conditionally by Koontz, title to remain in him until the whole purchase money was paid. The condition of the sale not having been complied with, he replevied the property. The Court, sitting without a jury, ruled that Koontz, the plaintiff in replevin, ought to have made demand on the defendant for the return of the engine before resorting to replevin, and, for this reason, judgment was rendered for the defendant. This Court said: "In other words, the Court decided that the defendant was entitled to the possession of the property, until a demand was made by the plaintiff for its return." This Court further held that the replevin bond, being one of indemnity only, the defendants had the right, in mitiation of damages, to show that the engine and thresher did in fact belong to Koontz, and that the title thereto was not determined in the replevin suit, but

the right of possession only. This being so, only nominal damages were recovered. See also, *Rowan v. State, supra.*

It seems clear that the question of title was definitely at issue and adjudicated in the replevin suit in this case. The right of possession, as such, was not involved. A declaration filed by Brickley complains that the defendant Ritter "took and unjustly detained the plaintiff's goods". Ritter's pleas were: 1, that he did not wrongfully take and detain the property; 2, that the property in the goods was in the defendant; and 3, that the property in the goods was in Miller & Bradley, Inc. *Mr. Poe,* in Vol. 1 of *Pleading and Practice,* Tiffany Ed., Sec. 631, says that the standard pleas in replevin are *non cepit* "and also the plea of property in the defendant, and sometimes also, in a third party. These pleas are not inconsistent. Under them, the burden is cast upon the plaintiff to prove his own title." See *Burrier v. Cunningham Piano Co.,* 135 Md. 135, 142, 108 A. 492; *Baltimore & Ohio R. Co. v. Rueter,* 114 Md. 687, 80 A. 220. Brickley filed a replication, alleging that the property in the goods "was in the plaintiff, John A. Brickley." Brickley, by his testimony, attempted to meet the burden of proving his title and possession. He testified to much, if not all, as the Court found in the second trial, that he sought to show by his proffer in that trial and he introduced in evidence the contract of June 27, 1949, and the cancellation contract of July 12, 1950. At the conclusion of his testimony, counsel for Ritter offered a prayer for an instructed verdict, as follows: "The defendant moves in this case that the jury be instructed that the plaintiff has offered no evidence legally sufficient to entitle the plaintiff to recover, for the reason that the plaintiff has not established title to the property replevied and the right to possession". The Court held that the contract was still in effect at the time the timber was sold, even though it could have been forfeited, (Brickley could have elected to do so) and that with the contract in effect, the Indian Chief had a right to cut the timber and, in fact, did sell the timber to Ritter. As

a result, the Court said: ". . . we feel that there is no question in this case about which minds could differ, under the law; and therefore the motion will have to be granted". The Court further said to the jury: "If there was a conflict in the testimony, you would, of course, pass upon that; but assuming everything that he (Brickley) says to be a fact, under the law he did not own this timber at the time it was sold, and therefore has no case;". It is to be noted that the contract contained this provision: "Purchaser agrees to pay seller $10 per 1,000 ft. for all saw timber cut off or from the farm and agrees to pay $3.00 per cord for all pulp wood. All such payments to be credited on the purchase price." It is undisputed that the Indian Chief, with the knowledge and acquiesence of Brickley, had cut and sold a substantial amount of pulpwood under the terms of this clause.

The appellant says that even if a question of title were in issue in the replevin suit, nevertheless, the judgment is void or is not conclusive because it does not comply with the requirements of Sec. 129 of Art. 75 of the Code of 1951, and so amounts to no more than a writ of *retorno habendo,* which under the holding of *Dermer v. Faunce,* 187 Md. 610, 51 A. 2d 76, was not a final order which was appealable. It is plain that the judgment in the replevin suit was in no sense the equivalent of or analogous to return of goods under a writ of *retorno habendo.* The opinion of the Court conclusively shows that title was finally adjudicated. Sec. 129 of Art. 75 says that whenever in replevin or detinue, there is a judgment in the alternative for the return of chattels or the payment of their value, judgment may be enforced in certain ways, therein set forth, and then provides that "Every judgment in detinue and replevin, and every verdict therein shall ascertain separately the value of the goods and chattels and the damages, if any, for their detention." There have been several cases construing this section and its effect. In *Standard Horseshoe Co. v. O'Brien,* 88 Md. 335, 41 A. 898, it was held that under the pro-

vision of this section of the Code a verdict in favor of the defendant for the return of the property replevied and one cent damages was erroneous. The Court held further that no objection could be made on appeal on account of the irregularity of the verdict, because the question had not been raised below and further, "although the verdict is irregular and untechnical in form, that we could not consider such a question unless it was brought before us, by a motion in arrest of judgment". In *Baltimore & Ohio R. Co. v. Rueter, supra,* the Court found that the judgment below for the plaintiff in replevin should be reversed and judgment entered for the defendant, but that this could not be done because "the value of the property replevied was not ascertained by the jury as required by Section 117 of Article 75 of the Code, and the further fact that there is no sufficient evidence in the record from which this Court can determine its value. The case will, therefore, have to be remanded in order that the value of the property replevied may be ascertained by a jury, unless the parties can agree to such value, and a judgment may be entered for appellant in accordance with the provisions of said section of the Code." The Court in *Cushwa v. Cushwa,* 5 Md. 44, where an irregular verdict had been rendered in an action of ejectment, said: "Because the verdict gave five hundred dollars damages, it is contended that inasmuch as no such damage could be legally given in an action of ejectment, the judgment is erroneous, although in accordance with the verdict, and therefore should be reversed. But no question on this subject was raised below, and no motion in arrest of judgment having been made, the Act of 1825, ch. 117, will not allow such a question to be raised in this court." *Mr. Poe,* in the work cited, Sec. 253, says, in discussing the form of judgment in replevin before the passage of what is now Sec. 129, "The judgment, when for the defendant, is for the return of the goods replevied and costs, where the goods were delivered to plaintiff at the beginning of suit". It is manifest from this and from the cases

that the requirements of Sec. 129 of Article 75, Code of 1951, are not so fundamental in their nature as to prevent a judgment, if not entered strictly in accordance with their terms, from necessarily being a valid judgment. It is further plain from the cases cited that an appeal would be entertained from a judgment not complying with Sec. 129, and that, therefore, the appellant's contention that Brickley could not have appealed, is groundless. Brickley made no objection whatever to the judgment in the replevin case, either as to form or as to substance. He made no motion for a new trial, no motion in arrest of judgment, no motion *n.o.v.*, and he did not appeal. He simply stood by and acquiesced in the judgment. We think that he is bound by the judgment and that it is conclusive on the question of title. The cases say that if a motion in arrest of judgment had been made, an appeal would lie to this Court either from the granting of it or from a refusal to grant it, and that upon the appeal, the whole record would be before the Court for decision, notwithstanding the rule that the Court will not pass upon any question not decided by or passed upon by the Court below. *Smith v. Wood*, 31 Md. 293 at 302. *Morgan v. Briscoe*, 4 Md. 271, 273.

It was decided long ago that this Court would not go behind a judgment irregular in form where the irregularity was not so fundamental as to render the judgment void, such as lack of jurisdiction, unless a motion in arrest was duly made below. *Morgan v. Briscoe, supra; Sasscer v. Walker's Ex'rs.*, 5 Gill & Johnson, 102, 110, *Cushwa v. Cushwa, supra; Ecker v. First National Bank*, 62 Md. 519.

We find that the question of the value of the logs replevied, although not in form agreed upon by the parties, is not actually in substantial dispute between them, and that there is no doubt that the value was proven. In the declaration in the suit on the bond, the value of the logs and the damages claimed is set forth with particularity and itemization. The plaintiff's mo-

tion for summary judgment in that case is based on the necessary ground that there is no genuine dispute between the parties as to any material fact. The affidavit of defense does not challenge the allegations of the declaration or motion as to the value of the logs. It is based entirely on the defense that title is in Brickley and that no title was in either the Indian Chief or Ritter. At the trial of the case below, there was no real cross-examination on the question of value and no evidence by the defendant to prove a value different from that established by the plaintiffs. No point was made in this Court, in brief or argument, that value was a real issue, and at the argument here, the appellant's counsel, in response to a question, agreed that if the judgment in the replevin suit was a final and appealable judgment, which determined the question of title, the judgment below should be affirmed. We think that irregularity in the form of verdict and judgment was simply that the value of the logs replevied was not stated. As agreed, there were no damages for their detention. The value of the logs, which the jury did not find in the replevin case, was the real question at issue in the second case, and the appellant, if it had felt that the value alleged and proven by the plaintiff was wrong, had an opportunity there to contest it and establish a true value. This, as we have said, it did not do, but in effect, acquiesced in the value proved.

We think the judgment below must be affirmed, title having been adjudicated in the first case and value in the second.

The appellant filed a motion in this Court that the appellees as non-residents be required "to provide security for costs". It alleged that in the Court below, it made such a motion at the beginning of the trial and that its motion was denied on the ground that it came too late. Since we hold that the Court below committed no error and that the judgment must be affirmed, the appellant is not injured by the refusal of the Court to grant the rule. Under Sec. 9 of Art. 24, Code of 1951, the defendant in

any action may at or before the Trial Court "have a rule on the plaintiff to give security for costs". The defendant will have the right at any time before the trial begins to apply for and obtain such a rule. The Court has no discretion. *Haney v. Marshall*, 9 Md. 194; *Poe, Pleading and Practice*, Tiff. Ed. Vol. 2, sec. 78. However, a close scrutiny of the record in this case indicates that the defendant did not make an unqualified demand for the application of the rule. Its counsel pointed out to the Court that the Statute authorized the motion at any time prior to trial. When the Court in turn pointed out that the provisions of Sec. 9 of Art. 24, Code of 1951, give "until the second day of the next term of the Court" to comply, the defendant said it did not want a postponement and moved to dismiss unless the security were posted immediately. This motion was denied and the defendant went to trial. We think that under these circumstances, the defendant attempted to "have its cake and eat it, too", and that it could not insist on the rule being laid unless the plaintiffs were given the statutory period to comply. Having gone to trial, it waived its right. *Spencer v. Trafford*, 42 Md. 1, 18.

*Judgment affirmed with costs.*